**25-11843**

# United States Court of Appeals

*for the*

# Eleventh Circuit

WILLIAM T. QUINN and DAVID CROSS,

*Plaintiffs/Appellants,*

– v. –

SECRETARY OF STATE FOR THE STATE OF GEORGIA.,

*Defendant/Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO: 1:24-cv-04364-SCJ
(Hon. Steve C. Jones)

## APPELLANTS' OPENING BRIEF

Robert P. Greenspoon
Mark A. Magas
DUNLAP BENNETT & LUDWIG PLLC
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
(312) 551-9500 (Telephone)
rgreenspoon@dbllawyers.com
mmagas@dbllawyers.com

*Counsel for Plaintiffs/Appellants*

CP COUNSEL PRESS    (800) 4-APPEAL • (JOB 624706)

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

WILLIAM T. QUINN, ET AL.,

           Plaintiffs-Appellants,

    vs.

SECRETARY, STATE OF GEORGIA,

           Defendant-Appellee.

Appeal No. 25-11843

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT BY
## PLAINTIFFS-APPELLANTS WILLIAM T. QUINN AND DAVID CROSS

Plaintiffs-Appellants William T. Quinn and David Cross ("Appellants"), by and through their undersigned counsel, submit the following certificate of interested persons and corporate disclosure statement under Federal Rules of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 through 26.1-3.

Baxenberg, Justin (Elias Law Group LLP – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund, pending motion to withdraw)

Bishop, Tyler L. (Elias Law Group LLP – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Black Voters Matter Fund (Proposed Intervenor-Defendant)

Chaudhuri, Pooja (Lawyers' Committee for Civil Rights Under Law – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the

C-1 of 10

People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia, pending motion to withdraw)

Common Cause Georgia (Former Proposed Intervenor-Defendant)

Cross, David (Plaintiff-Appellant)

Cusick, John S. (NAACP Legal Defense & Educational Fund, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Davis, Alexander S. (Lawyers' Committee for Civil Rights Under Law – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Election Watch, Inc. (Aligned with Plaintiffs-Appellants)

Flachsbart, William W. (Dunlap Bennett & Ludwig PLLC – Attorney for Plaintiffs-Appellants)

Freidlin, Akiva (American Civil Liberties Union Foundation of Georgia, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Quinn v. Secretary, State of Georgia

GALEO Latino Community Development Fund, Inc. (Former Proposed Intervenor-Defendant)

Genberg, Jack (Southern Poverty Law Center – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia)

Georgia Coalition for the People's Agenda, Inc. (Former Proposed Intervenor-Defendant)

Georgia State Conference of the NAACP (Former Proposed Intervenor-Defendant)

Greenspoon, Robert P. (Dunlap Bennett & Ludwig PLLC – Attorney for Plaintiffs-Appellants)

Harding, Todd Andrew (Harding Law Firm, LLC – Attorney for Plaintiffs-Appellants)

Heard, Bradley E. (Southern Poverty Law Center – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia)

Ho-Sang, Montoya M. (Akerman LLP – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia, pending motion to withdraw)

Houk, Julie M. (Lawyers' Committee for Civil Rights Under Law – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Isaacson, Cory (American Civil Liberties Union Foundation of Georgia, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Jones, Steve C. (United States District Judge)

Lakin, Sophia Lin (American Civil Liberties Union Foundation – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

League of Women Voters of Georgia (Former Proposed Intervenor-Defendant)

Lee, Theresa J. (American Civil Liberties Union Foundation – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Ludwig, David (Dunlap Bennett & Ludwig PLLC – Attorney for Plaintiffs-Appellants)

Magas, Mark A. (Dunlap Bennett & Ludwig PLLC – Attorney for Plaintiffs-Appellants)

May, Caitlin (American Civil Liberties Union Foundation of Georgia, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Mocine-McQueen, Marcos (Elias Law Group LLP – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Naifeh, Stuart (NAACP Legal Defense & Educational Fund, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Nkwonta, Uzoma N. (Elias Law Group LLP – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Noonan, Alexandra (Office of Attorney General Chris Carr – Attorney for Defendant-Appellee)

Quinn v. Secretary, State of Georgia

O'Donnell, Courtney (Southern Poverty Law Center – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia)

O'Donnell, Renata M. (Elias Law Group LLP – Former Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Pinchak, James J. (Elias Law Group, LLP – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Putbrese, Cortland C. (Dunlap Bennett & Ludwig PLLC – Attorney for Plaintiffs-Appellants)

Quinn, William T (Plaintiff-Appellant)

Raffensperger, Brad (Defendant-Appellee, in his official capacity as Secretary of State of Georgia)

Rohani, I. Sara (NAACP Legal Defense & Educational Fund, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Rosenberg, Ezra D. (Lawyers' Committee for Civil Rights Under Law – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Quinn v. Secretary, State of Georgia

Shapiro, Avner M. (Southern Poverty Law Center – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia)

Smith-Carrington, Avatara A. (NAACP Legal Defense & Educational Fund, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Sparks, Adam M. (Krevolin & Horst, LLC – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Spencer, R. Gary (NAACP Legal Defense & Educational Fund, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Szilagyi, Heather (Lawyers' Committee for Civil Rights Under – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia, pending motion to withdraw)

Washington, Anré D. (Krevolin & Horst, LLC – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Quinn v. Secretary, State of Georgia

Weber, Gerald R. (Law Office of Gerald R. Weber – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Winichakul, Pichaya Poy (Southern Poverty Law Center – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia)

\*\*\*

Appellants are individuals.

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

Dated: June 12, 2025

Respectfully submitted,

*/s/ Robert P. Greenspoon*
Robert P. Greenspoon
Mark A. Magas
DUNLAP BENNETT & LUDWIG PLLC
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
rgreenspoon@dbllawyers.com
mmagas@dbllawyers.com

*Counsel for Plaintiffs-Appellants William T. Quinn and David Cross*

C-8 of 10

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that the foregoing has been prepared in Times New Roman (14 point) font, a proportionally spaced serif font as required under Federal Rule of Appellate Procedure 32(a)(5).

*Dated: June 12, 2025*                    /s/ *Robert P. Greenspoon*
                                          Robert P. Greenspoon

Quinn v. Secretary, State of Georgia

## CERTIFICATE OF SERVICE

The undersigned counsel certifies on this day the foregoing was filed electronically with the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*Dated: June 12, 2025*                    */s/ Robert P. Greenspoon*
                                          Robert P. Greenspoon

C-10 of 10

**STATEMENT REGARDING ORAL ARGUMENT**

In accordance with 11th Cir. R. 28-1(c), Appellants respectfully request the Court hold oral argument. This appeal involves important issues affecting Article III constitutional standing in voter registration list maintenance cases. A voter's undermined confidence in a state's electoral process sufficiently confers standing under the NVRA and established law in several courts around the country, but this point is a matter of first impression in the Eleventh Circuit. In the underlying district court case, Appellants cited cases from other jurisdictions wherein courts have held that a voter's undermined confidence in the electoral process is sufficient to confer standing on that voter to file suit. Appellants are not aware of any Eleventh Circuit case that is directly on point or that has explicitly addressed (much less rejected) this proposition. The district court, however, erroneously concluded that *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) is binding Eleventh Circuit authority in conflict with these holdings of several other courts. Consequently, Appellants respectfully submit that oral argument would aid the Court in assessing the basis for Appellants' Article III constitutional standing in this case.

# **TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE ISSUES....................................................................1

STATEMENT OF THE CASE........................................................................2

    A. Course of Proceedings and Dispositions in the Court Below ....................2

    B. Statement of Facts ...............................................................4

    C. Standard of Review ..............................................................5

SUMMARY OF THE ARGUMENT ..............................................................6

ARGUMENT .........................................................................................8

  I. The District Court Erred in Rejecting that Appellants'
Undermined Confidence in Georgia's Electoral Process
Confers Standing Under the NVRA. .........................................................8

    A. Appellants' Undermined Confidence is Particularized
Because It Results from Their Unique Experience. ...............................10

    B. Appellants' Undermined Confidence is Present and
Actual Rather than Speculative. ..................................................18

CONCLUSION......................................................................................19

# TABLE OF CITATIONS

**Cases**

*Am. Civil Rights Union v. Martinez-Rivera*,
   166 F. Supp. 3d 779 (W.D. Tex. 2015)..................................................................17

*Am. Legion v. Am. Humanist Ass'n*,
   588 U.S. 29 (2019)..................................................................................................15

*Baughcum v. Jackson*,
   92 F.4th 1024 (11th Cir. 2024) ..............................................................................19

*Buckley v. Valeo*,
   424 U.S. 1 (1976)....................................................................................................12

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)................................................................................................18

*Crawford v. Marion Cty. Election Bd.*,
   553 U.S. 181 (2008)................................................................................................12

*Democratic Exec. Comm. of Fla. v. Lee*,
   915 F.3d 1312 (11th Cir. 2019) ..............................................................................12

*FEC v. Akins*,
   524 U.S. 11 (1998)..................................................................................................10

*Ga. Muslim Voter Project v. Kemp*,
   918 F.3d 1262 (11th Cir. 2019) ..............................................................................12

*Green v. Bell*,
   No. 3:21-cv-00493-RJC-DCK,
   2023 U.S. Dist. LEXIS 45989 (W.D.N.C. Mar. 19, 2023)....................................13

*Iowa Voter All. v. Black Hawk Cnty.*,
   515 F. Supp. 3d 980 (E.D. Iowa 2021) ..................................................................16

*Judicial Watch, Inc. v. Griswold*,
   554 F. Supp. 3d 1091 (D. Colo. 2021), *aff'd on reconsideration*,
   No. 20-cv-02992-PAB-KMT,
   2022 U.S. Dist. LEXIS 153290 (D. Colo. Aug. 25, 2022) ..................... 13, 15, 19

*Judicial Watch, Inc. v. King*,
   993 F. Supp. 2d 919 (S.D. Ind. 2012)....................................................................13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)....................................................................... 6, 9, 10, 18

*Maron v. Chief Fin. Officer of Fla.*,
  136 F.4th 1322 (11th Cir. 2025) ................................................................6

*Md. Election Integrity, LLC v. Md. State Bd. of Elections*,
  No. 24 C 672, 2024 WL 2053773 (D. Md. May 8, 2024) ..................................17

*Nat'l Coal. on Black Civic Participation v. Wohl*,
  512 F. Supp. 3d 500 (S.D.N.Y. 2021)........................................................13

*Purcell v. Gonzales*,
  549 U.S. 1 (2006)..................................................................................13

*Republican Nat'l Comm. v. Aguilar*,
  No. 2:24-cv-00518-CDS-MDC,
  2024 U.S. Dist. LEXIS 189613 (D. Nev. Oct. 18, 2024) ..................................16

*Republican Nat'l Comm. v. Benson*,
  754 F. Supp. 3d 773 (W.D. Mich. 2024) ....................................................16

*Smith v. Marcus & Millichap, Inc.*,
  106 F.4th 1091 (11th Cir. 2024) ............................................................ 5-6

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................ 9, 10, 19-20

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ..............................................................................19

*United States v. Richardson*,
  418 U.S. 166 (1974) ..............................................................................10

*United States v. Students Challenging Reg. Agency Procs.*,
  412 U.S. 669 (1973)..............................................................................10

*Walters v. Fast AC, Ltd. Liab. Co.*,
  60 F.4th 642 (11th Cir. 2023) ................................................................18

*Wis. Voter All. v. Millis*,
  720 F. Supp. 3d 703 (E.D. Wis. 2024)................................................... 12-13

*Wood v. Raffensperger*,
  981 F.3d 1307 (11th Cir. 2020) ............................................ i, 1, 3, 8, 10, 11, 15

**Statutes**

28 U.S.C. § 1291 ....................................................................................1

52 U.S.C. § 20501 ..................................................................................4

52 U.S.C. § 20507(a)(4)(B) ......................................................................4

iv

52 U.S.C. § 20510 ...................................................................................................4

O.C.G.A. § 21-2-210 ..............................................................................................4

O.C.G.A. § 21-2-233(c) ..........................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(1) ...........................................................................................5

## STATEMENT OF JURISDICTION

This is an appeal of an order and final judgment of the United States District Court for the Northern District of Georgia. The district court dismissed the Amended Complaint filed by Plaintiffs-Appellants William T. Quinn and David Cross ("Appellants") for lack of standing. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether the district court erred in holding that Appellee's specific treatment of Appellants' lawful and data-supported request to maintain correct voter registration lists, which treatment undermined their individual and particular confidence in Georgia's electoral process, caused Appellants' NVRA citizen's suit to embody just a generalized grievance that any registered voter might have, rather than a particularized injury.

2.      Whether *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020), is binding Eleventh Circuit authority on "undermined confidence" as a ground for standing in an NVRA list-maintenance suit, despite never addressing undermined confidence, and whether Appellants' specific interactions with Appellee constituted "particularized knowledge, as opposed to particularized injury."

1

3.      Whether the district court erred in holding that Appellants' undermined confidence in a state's electoral process was too speculative to support standing despite the presence of well-pleaded factual allegations of undermined confidence as a current, actual injury, which allegations must be accepted as true at the pleading stage.

**STATEMENT OF THE CASE**

**A.      Course of Proceedings and Dispositions in the Court Below**

On September 26, 2024, Appellants filed a complaint in the District Court for the Northern District of Georgia against Appellee Brad Raffensperger, Secretary of State of Georgia. (Dist. Ct. Dkt. No. 1). Appellants asserted that Georgia violated its voter list maintenance obligations under the NVRA by failing to follow the state's statutory procedures to investigate certain anomalous voter registrations of voters who appear to have permanently moved out of the jurisdiction where they are registered. (Dist. Ct. Dkt. No. 1 at 1-2). Appellants alleged injuries of both undermined confidence and vote dilution. (Dist. Ct. Dkt. No. 1 at 1-2, 9-10, 12).

Appellee moved to dismiss the Complaint on October 21, 2024. (Dist. Ct. Dkt. No. 30). Additionally, several voter advocacy groups moved to intervene, primarily due to concerns that Appellants had requested relief prior to the November 2024 general election. (Dist. Ct. Dkt. Nos. 8, 10, 12).

2

Appellants filed an amended complaint on October 25, 2024, delaying their requested relief until after the election and mooting Appellee's motion to dismiss and the motions to intervene. (Dist. Ct. Dkt. Nos. 45-47). Appellee again moved to dismiss on November 8, 2024. (Dist. Ct. Dkt. No. 48).

On April 30, 2025, the district court dismissed Appellants' Amended Complaint. (Dist. Ct. Dkt. No. 66). The district court held in relevant part that Appellants' undermined confidence in Georgia's electoral process did not constitute a particularized and non-speculative injury sufficient to confer standing. (Dist. Ct. Dkt. No. 66 at 5-10). The district court considered *Wood* "binding Eleventh Circuit authority" that undermined confidence is a generalized grievance rather than a particularized injury. (Dist. Ct. Dkt. No. 66 at 8). The district court also noted that Appellants' "particularized knowledge, as opposed to particularized injury, does not satisfy the standing inquiry." (Dist. Ct. Dkt. No. 66 at 8). Separately, in its analysis of whether Appellants' injury was speculative, the district court rejected Appellants' allegations in the Amended Complaint as "speculation that the possibility of errors in the voter rolls put [Appellants] at risk to lose confidence in election results or somehow dilute their votes." (Dist. Ct. Dkt. No. 66 at 9-10). The district court then entered final judgment against Appellants. (Dist. Ct. Dkt. No. 67).

Appellants timely filed a notice of appeal on May 29, 2025. (Dist. Ct. Dkt. No. No. 68).

3

## B.    Statement of Facts

To uphold the integrity of elections, prevent voter fraud, and protect our citizens' trust in the election process, the federal government requires states to maintain voter lists, in part, by cancelling registrations that are no longer active. *See* National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501, *et seq*. Under 52 U.S.C. § 20507(a)(4)(B), states must "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" based on a change of address. Under 52 U.S.C. § 20510, the NVRA provides a private right of action to persons aggrieved by a violation of this requirement.

Georgia has implemented procedures for maintaining the state's voter lists. O.C.G.A. § 21-2-210, *et seq*. The procedures include instructions for what Appellee must do when presented with data from the U.S. Postal Service showing that electors have permanently left the jurisdiction where they are registered. O.C.G.A. § 21-2-233(c).

A list of voter registrations was purchased from the Georgia Secretary of State on June 30, 2024. (Dist. Ct. Dkt. No. 45 ¶ 20). This data was then compared to U.S. Postal Service data. (Dist. Ct. Dkt. No. 45 ¶¶ 21–24). From this analysis, Appellants discovered tens of thousands of registrations where the voters had permanently moved out of the state or jurisdiction where they were registered—yet their

4

registrations were marked as "active" at their former address. (Dist. Ct. Dkt. No. 45 ¶ 25). This discovery shook their faith in the electoral process. (Dist. Ct. Dkt. No. 45 ¶ 46).

Appellants are registered Georgia voters. Mr. Quinn resides in Forsyth County. Mr. Cross resides in Gwinnett County. (Dist. Ct. Dkt. No. 45 ¶¶ 4-5). On September 3, 2024, Appellants provided the above-named data to Appellee and reminded him of his obligations to correct these problematic registrations under the NVRA and Georgia law. (Dist. Ct. Dkt. No. 45 ¶¶ 26–30). Appellee, however, never responded to this information, further degrading Appellants' confidence in the electoral process. (Dist. Ct. Dkt. No. 45 ¶ 35). Worse, Appellee later argued that he was within his rights to ignore these anomalies entirely, thereby giving Appellants no reason to trust the integrity of the voter rolls. (Dist. Ct. Dkt. No. 48-1 at 1-3).

Appellants obtained new voter registration and change of address data after filing the original Complaint. (Dist. Ct. Dkt. No. 45 ¶ 39). Using this new data, Appellants discovered that up to 35% of the prior anomalies had not been remedied, further eroding what little confidence they had left in Georgia's electoral process. (Dist. Ct. Dkt. No. 45 ¶¶ 40–44).

### C.    Standard of Review

The Eleventh Circuit reviews *de novo* a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *Smith*

*v. Marcus & Millichap, Inc.*, 106 F.4th 1091, 1097 (11th Cir. 2024). This includes dismissal based on a lack of standing. *Id.* at The Court "accept[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff[s]." *Id.* (quotation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice. . . ." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To prove an "injury in fact" to support Article III constitutional standing, a plaintiff may allege ***either*** an "actual" harm ***or*** an imminent one. *Id.* at 560. It is only standing-theories of "imminent" harm that trigger inquiry into whether such harm is speculative, hypothetical, or conjectural. *Id.* at 564. Theories and allegations of "actual" harm do not trigger a court's obligation to discern if the harm is speculative or not, since (if proved true) a recited "actual" concrete and particularized harm suffices to prove Article III "injury in fact." *See id.*; *see also Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1330 (11th Cir. 2025) (describing that allegations of a concrete, particularized, and actual harm that has already occurred are sufficient to show an injury in fact).

## SUMMARY OF THE ARGUMENT

This appeal raises a question of first impression in the Eleventh Circuit whether the undermined confidence of two voters in a state's electoral process may provide standing under the NVRA over anomalous registrations that they discovered,

6

and that they particularly tried to correct. Appellants as registered Georgia voters personally discovered that Georgia's voter rolls contain a substantial number of anomalous registrations in violation of Georgia's responsibilities under the NVRA. Appellants provided detailed notice of these anomalous registrations to Appellee, Georgia's chief election official, more than two months before the 2024 general election. Appellee never responded, damaging Appellants' confidence in Georgia's electoral process.

Appellee asserts that it has no obligation to respond to Appellants, and despite the dictates of the NVRA, that it is immune from any consequences after such mistreatment of Georgia voters. Appellee argues that Appellants' undermined confidence is not an injury in fact sufficient to provide Article III standing. The district court erred in accepting this argument, finding Appellants' undermined confidence non-particularized and speculative.

This was legal error. Appellee's undermined confidence is particular to them and based on their personal experience with the state. They personally discovered the anomalous voter registrations, they personally notified the state, and then they personally were ignored. No other voter shares that same experience. Appellees also pleaded that their confidence is actually and presently undermined—there is nothing speculative about it.

7

Whether a voter's undermined confidence in a state's electoral process may qualify as an injury in fact is a matter of first impression in the Eleventh Circuit. The district court, however, misbelieved that this Court's decision in *Wood* was binding authority against an "undermined confidence" theory of standing in NVRA cases. But *Wood* was not based on a violation of the NVRA, and had nothing to do with a voter's undermined confidence.

That undermined confidence may qualify as an injury in fact finds ample support in precedent of both this Court and the U.S. Supreme Court. Many district courts across the country reached this same conclusion. Although Appellee may point to scattered cases that held differently, none of these cases involve a voter who personally discovered a state's violations under the NVRA, performed a unique data analysis, which is not available to the public, and then were personally and particularly rebuffed. Nor are they persuasive authority, even if they were on point.

This Court should reverse the order and judgment of the district court dismissing Appellants' Complaint and remand for further proceedings.

## **ARGUMENT**

I. **THE DISTRICT COURT ERRED IN REJECTING THAT APPELLANTS' UNDERMINED CONFIDENCE IN GEORGIA'S ELECTORAL PROCESS CONFERS STANDING UNDER THE NVRA.**

Appellants alleged two independent types of injuries in their Amended Complaint, either one of which would establish Article III standing: undermined

8

confidence and vote dilution. The district court confusingly combined its analysis of both injuries in its analysis of Appellants' standing. This caused the district court to make a series of mistakes. Undermined confidence and vote dilution are distinct injuries with different factual and legal considerations. In order to highlight the district court's errors, this appeal focuses solely on undermined confidence, since Appellants need not establish vote dilution to support Article III standing if undermined confidence already qualifies under the law. As explained below, the district court erred in holding that Appellants lack standing based on their undermined confidence in Georgia's electoral process.

To establish standing, a plaintiff must show three things: an "injury in fact," a "causal connection between the injury and conduct complained of," and redressability. *See Lujan*, 504 U.S. at 560–61. Here, the district court's decision only concerned the first of these elements—injury in fact. (Dkt. No. 48-1 at 9–15). An injury in fact has three elements: it must be (1) concrete, (2) particularized, and (3) actual or imminent. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). The district court mistakenly held that Appellants' undermined confidence in Georgia's electoral process was not particularized and not actual or imminent. (*See* Dist. Ct. Dkt. No. 66 at 5-10). Appellants' undermined confidence was particular to them and based on their personal experience with the state. Appellants also alleged that their undermined confidence was present and actual. The district court should have

9

accepted this fact as true. This Court should reverse the order and judgment of the district court and remand for further proceedings.

### A.   Appellants' Undermined Confidence is Particularized Because It Results from Their Unique Experience.

The district court erred in finding that Appellants' undermined confidence is not particularized. A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Wood*, 981 F.3d at 1314, citing *Spokeo*, 578 U.S. at 339. This is in contrast to injuries that are "common to all members of the public." *Lujan*, 504 U.S. at 575, quoting *United States v. Richardson*, 418 U.S. 166, 176–77 (1974) (internal quotations omitted). Even a trivial injury is sufficient to satisfy this requirement. *United States v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973) (collecting cases).

"The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance. The victims' injuries from a mass tort, for example, are widely shared, to be sure, but each individual suffers a particularized harm." *Spokeo*, 578 U.S. at 339 n.7. "Where large numbers of voters suffer interference with voting rights conferred by law," that interference constitutes a particularized harm. *FEC v. Akins*, 524 U.S. 11, 24 (1998).

As an initial matter, the district court erred in relying on *Wood* as "binding Eleventh Circuit authority" for the proposition that "the Eleventh Circuit rejected such generalized grievance claims [including undermined confidence] as a failure to

allege a particularized injury." (Dist. Ct. Dkt. No. 66 at 6, 8). In *Wood*, the plaintiff alleged that Georgia's absentee-ballot and recount procedures violated his constitutional rights and sought to enjoin the certification of the 2020 election. 981 F.3d at 1310. *Wood* never even mentioned the term undermined confidence, much less that undermined confidence was such a generalized grievance. *Wood* also did not involve any alleged violation under the NVRA. Wood instead concerned vote dilution under state law. *Id.* at 1312, 1314-15. Appellee acknowledged this in his reply brief supporting his motion to dismiss, arguing only that the reasoning from *Wood* applies by some kind of undisclosed analogy to undermined confidence. (Dist. Ct. Dkt. No. 53 at 9). The plaintiff in *Wood* also lacked any particularized injury. The plaintiff was not a candidate, participant or invited observer in the allegedly flawed recounts, and had no unique personal knowledge of Georgia's recount procedures or any interaction with the state different from that of the public.[1] *See Wood*, 981 F.3d at 1316.

Whether a voter's undermined confidence in a state's electoral process may qualify as an injury in fact is instead a matter of first impression in the Eleventh Circuit. The Court should hold that Appellants' undermined confidence qualifies as

---

[1] The Court in *Wood* even suggested that non-party election monitors who had unique experiences of the recount events might have a particularized injury. 981 F.3d at 1316. Appellants here similarly have unique knowledge and experience with the state different from any other member of the public.

an injury in fact as being both particularized and, as explained later in this brief, non-speculative. "It is beyond dispute that 'protecting public confidence in elections is deeply important—indeed, critical—to democracy.'" *Ga. Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1274 (11th Cir. 2019) (quoting *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019)); *see also Buckley v. Valeo*, 424 U.S. 1, 265 (1976) ("It is also important to restore and maintain public confidence in federal elections.").

Both this Court and the U.S. Supreme Court have placed special significance on the integrity of the electoral process and how it affects citizens. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008) (holding that "public confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process"); *Buckley v. Valeo*, 424 U.S. 1, 265 (1976) ("It is also important to restore and maintain public confidence in federal elections."); *Ga. Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1274 (11th Cir. 2019), quoting *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019) ("It is beyond dispute that 'protecting public confidence in elections is deeply important—indeed, critical—to democracy.'").

Courts across the United States have recognized that when a plaintiff's confidence in an electoral process has eroded, that fact constitutes an injury which satisfies the purposes of Article III standing. *Wis. Voter All. v. Millis*, 720 F. Supp.

3d 703, 709 (E.D. Wis. 2024); *Green v. Bell*, No. 3:21-cv-00493-RJC-DCK, 2023 U.S. Dist. LEXIS 45989, *9 (W.D.N.C. Mar. 19, 2023); *Judicial Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1104 (D. Colo. 2021), *aff'd on reconsideration*, No. 20-cv-02992-PAB-KMT, 2022 U.S. Dist. LEXIS 153290, at *12 (D. Colo. Aug. 25, 2022); *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 515–16 (S.D.N.Y. 2021); *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012); *cf. Purcell v. Gonzales*, 549 U.S. 1, 4 (2006) (per curiam) ("Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy.").

For example, in *Judicial Watch v. Griswold*, the plaintiffs alleged that the Colorado Secretary of State's failure to comply with the NVRA "undermin[ed] their confidence in the integrity of the electoral process, discourage[ed] their participation, and instill[ed] in them fear that their votes [would] be nullified or diluted." 554 F. Supp. 3d at 1102. The district court held that the plaintiffs' undermined confidence was not a generalized harm because there was "no indication that the undermined confidence and discouraged participation are 'common to all members of the public.'" *Id.* The district court reaffirmed this decision on reconsideration. *Judicial Watch*, No. 20-cv-02992-PAB-KMT, 2022 U.S. Dist. LEXIS 153290, at *12.

Here, Appellants' undermined confidence in Georgia's electoral process has uniquely affected them in a deeply personal and individual way. Plaintiffs personally

13

saw the anomalous voter registration data, corresponded with Appellee, and were ignored by the Secretary. (Dist. Ct. Dkt. No. 45 ¶¶ 1, 3, 25-30, 35, 40-46, 51, 63; Dist. Ct. Dkt. No. 48-1 at 1-3). In the Amended Complaint, Appellants identified several personal experiences and acts by Appellee that severely eroded Appellants' confidence in Georgia's electoral process:

- Appellants learned of numerous anomalies in the voter rolls, *e.g.*, that the voter rolls listed many voters who had told the U.S. Postal Service they had left the jurisdiction. (Dist. Ct. Dkt. No. 45 ¶¶ 20–24.) Yet, these voters were still listed as "active" on the voter rolls at addresses where they no longer resided, which is improper under established law.

- When Appellants informed Appellee of these issues and provided him with proof, Appellee ignored them. (Dist. Ct. Dkt. No. 45 ¶¶ 25–29, 35.)

- Even after Appellants filed the original Complaint, Appellee still took no action to correct the voter rolls. Instead, Appellee moved to dismiss, claiming that Plaintiffs' data was supposedly outdated. (Dist. Ct. Dkt. No. 30-1 at 14).

- Appellants examined updated data from shortly before the election, and they found that over a third of the anomalies had not been remedied. (Dist. Ct. Dkt. No. 45 ¶¶ 39–45.)

- After advising Appellee of this troubling fact by way of their Amended Complaint, Appellee continued to ignore Appellants. Instead, Appellee has

14

taken the untenable position that he has absolutely no obligation to remedy these issues and is effectively free to do whatever he wants. While that is not the law, the fact that Appellee believes this further undermines Appellants' confidence in Georgia's electoral process. (Dist. Ct. Dkt. No. 48-1 at 1-3).

Appellants have a grievance that is differentiated and uncommon to any other member of the public. This is a particularized injury and fits soundly with the Court's decision in *Wood*, where it would have sufficed under Article III had plaintiff alleged even a tenuous personal connection with the recount process. Appellants' unique knowledge of the data and particular interactions with Appellee make them far more than "concerned bystander[s]." *See Wood*, 981 F.3d at 1316. Like *Judicial Watch v. Griswold*, there is no indication here that Appellants' undermined confidence is "common to all members of the public." 554 F. Supp. 3d at 1102. In fact, it cannot be. The public does not have access to the same data and analysis as Appellants. Indeed, Appellants' unique data and particular interactions with Appellee distinguish this case from others where any other member of the public may simply recast a party's positions under an "I-take-offense" argument. *See Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 83 (2019) (Gorsuch, J., concurring).

Appellee has previously, and may again in its responsive brief, point to other cases that found a voter's undermined confidence to constitute a generalized grievance rather than a particularized injury. (Dist. Ct. Dkt. No. 53 at 8-9). The

15

district court did not rely on such cases. However, if this Court determines they are germane, they are distinguishable:

- ***Republican Nat'l Comm. v. Benson*, 754 F. Supp. 3d 773 (W.D. Mich. 2024):** The Michigan Director of the Bureau of Elections responded to the plaintiffs' notice, explaining deficiencies with the plaintiffs' data. *Id.* at 782. The plaintiffs' alleged undermined confidence was thus of their own making, and also solely grounded in their fear of vote dilution. *Id.* at 786.

- ***Republican Nat'l Comm. v. Aguilar*, No. 2:24-cv-00518-CDS-MDC, 2024 U.S. Dist. LEXIS 189613 (D. Nev. Oct. 18, 2024):** The plaintiff only claimed "he [was] different from other members of the public because he [was] a 'registered voter in Nevada who votes in the very local and statewide elections that are suffering from bloated rolls.'" *Id.* at *17. Similar to *Benson*, the plaintiff's alleged undermined confidence was limited to the potential for vote dilution. *Id.* at *17-19.

- ***Iowa Voter All. v. Black Hawk Cnty.*, 515 F. Supp. 3d 980, 991–92 (E.D. Iowa 2021):** The only act that the plaintiffs complained of was that a county's use of non-governmental grants to fund an election burdened their right to vote by compromising the integrity of the election. *Id.* at 990. This act was not unique or personal to the plaintiffs. *Id.*

16

- ***Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 785 (W.D. Tex. 2015):** The organizational plaintiff only alleged undermined confidence broadly shared by the organization and all its members. *Id.* at 789. The court also based its finding that undermined confidence was a generalized grievance on a magistrate judge's report finding this harm speculative, to which neither party objected. *Id.*

- ***Md. Election Integrity, LLC v. Md. State Bd. of Elections*, No. 24 C 672, 2024 WL 2053773 (D. Md. May 8, 2024):** The organizational plaintiff only pleaded facts about potential vote dilution. *Id.* at *8-9. The plaintiff's complaint lacked any detail about how the organization's members were personally affected. *Id.*

Here, by contrast, Appellants' pleaded facts, accepted as true on motion to dismiss, supporting that their undermined confidence results from their unique data and analysis, which is not available to the public, and from their particular interactions with and maltreatment by Appellee.

Additionally, the district court improperly characterized Appellants' undermined confidence as "particularized knowledge, as opposed to a particularized injury." (Dist. Ct. Dkt. No. 66 at 8). The district court did not cite any authority to support this distinction. Nor could it. This distinction has no legal basis. If this were a correct statement of law, plaintiffs in other areas of the law would not be able to

17

establish sufficient Article III standing to prove torts such as emotional distress, which are based on and fueled by a plaintiff's particularized knowledge. *See Walters v. Fast AC, Ltd. Liab. Co.*, 60 F.4th 642, 648 (11th Cir. 2023) (holding that "matters within [a plaintiff's] personal knowledge" may provide sufficient evidence of a particularized injury in fact.).

This Court should find that Appellants' undermined confidence in Georgia's electoral process is a particularized injury.

### B. Appellants' Undermined Confidence is Present and Actual Rather than Speculative.

The district court further erred in finding Appellants' undermined confidence speculative. The district court dismissed Appellants' allegations as only claiming a possibility of errors in the voter rolls, finding that this was too speculative to support standing. (Dist. Ct. Dkt. No. 66 at 9-10). The district court entirely ignored Appellants' arguments about how their undermined confidence was a present injury that existed in part because of Appellee's "unwillingness to even respond to [Appellants'] concerns." (*See* Dist. Ct. Dkt. No. 49 at 17).

To have standing, a plaintiff's injury must either be "present, "certainly impending," or there must be a substantial risk of it occurring. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013); *see also Lujan*, 504 U.S. at 560 (distinguishing actual and imminent injuries). This case concerns an actual injury. "An actual . . . injury, unlike a conjectural or hypothetical one, is one which has occurred . . . ."

18

*Baughcum v. Jackson*, 92 F.4th 1024, 1031 (11th Cir. 2024), citing S*usan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

For example, in *Judicial Watch v. Griswold*, a district court held that the plaintiffs' allegations satisfied the requirement for an injury in fact to be actual or imminent. The court reasoned that the plaintiffs' confidence was undermined now (at the present time) and they were "not worried that their confidence could be undermined at some point in the future." 554 F. Supp. 3d at 1103–04.

The same is true here. Appellants' undermined confidence is an injury that presently affected them at the time of the Amended Complaint. Appellants explicitly pleaded facts, which the law accepts as true on motion to dismiss, that their undermined confidence was a present injury based on their unique knowledge and interactions with Appellee. (Dist. Ct. Dkt. No. 45 ¶¶ 1, 3, 25-30, 35, 40-46, 51, 63). The district court erred to hold otherwise, apparently conflating the "actual" and "imminent" tests under the "injury in fact" prong of Article III standing.

The Court should find that Appellants' undermined confidence in Georgia's electoral process is an actual, present injury and is not speculative.

## CONCLUSION

For all these reasons, Appellants' undermined confidence in Georgia's electoral process is an injury in fact that is concrete (not challenged by the district court), particularized, and actual. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339

19

(2016). Appellants thus have standing in this case. The Court should reverse the order and judgment of the district court dismissing this case and remand for further proceedings.

Dated: July 8, 2025

Respectfully submitted,

*/s/ Robert P. Greenspoon*

Robert P. Greenspoon
Mark A. Magas
DUNLAP BENNETT & LUDWIG PLLC
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
rgreenspoon@dbllawyers.com
mmagas@dbllawyers.com

*Counsel for Plaintiffs-Appellants William T. Quinn and David Cross*

20

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the word limit of Fed. R. App. P. 32(g)(1) and Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,408 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14pt Times New Roman font.

Dated: July 8, 2025                                   */s/ Robert P. Greenspoon*
                                                      Robert P. Greenspoon

21

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies on this day the foregoing was filed electronically with the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: July 8, 2025

*/s/ Robert P. Greenspoon*
Robert P. Greenspoon

22