# United States Court of Appeals

*for the*

# Eleventh Circuit

———— ◆ ————

WILLIAM T. QUINN, DAVID CROSS,

*Plaintiffs-Appellants,*

– v. –

SECRETARY OF STATE FOR THE STATE OF GEORGIA,

*Defendant-Appellee.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
IN NO. 1:24-CV-04364-SCJ
(HONORABLE STEVE C. JONES,
U.S. DISTRICT JUDGE)

## REPLY BRIEF OF APPELLANTS

ROBERT GREENSPOON
MARK MAGAS
DUNLAP BENNETT & LUDWIG PLLC
*Counsel for Plaintiffs-Appellants*
333 North Michigan Avenue, Suite 2700
Chicago, Illinois 60601
(312) 551-9500

CP COUNSEL PRESS   (800) 4-APPEAL • (624708)

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

WILLIAM T. QUINN, ET AL.,

            Plaintiffs-Appellants,

    vs.

SECRETARY, STATE OF GEORGIA,

            Defendant-Appellee.

Appeal No. 25-11843

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT BY
<u>PLAINTIFFS-APPELLANTS WILLIAM T. QUINN AND DAVID CROSS</u>**

Plaintiffs-Appellants William T. Quinn and David Cross ("Appellants"), by and through their undersigned counsel, submit the following certificate of interested persons and corporate disclosure statement under Federal Rules of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 through 26.1-3.

Baxenberg, Justin (Elias Law Group LLP – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund, pending motion to withdraw)

Bishop, Tyler L. (Elias Law Group LLP – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Black Voters Matter Fund (Proposed Intervenor-Defendant)

Chaudhuri, Pooja (Lawyers' Committee for Civil Rights Under Law – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the

People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia, pending motion to withdraw)

Common Cause Georgia (Former Proposed Intervenor-Defendant)

Cross, David (Plaintiff-Appellant)

Cusick, John S. (NAACP Legal Defense & Educational Fund, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Davis, Alexander S. (Lawyers' Committee for Civil Rights Under Law – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Election Watch, Inc. (Aligned with Plaintiffs-Appellants)

Flachsbart, William W. (Dunlap Bennett & Ludwig PLLC – Attorney for Plaintiffs-Appellants)

Freidlin, Akiva (American Civil Liberties Union Foundation of Georgia, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

GALEO Latino Community Development Fund, Inc. (Former Proposed Intervenor-Defendant)

Genberg, Jack (Southern Poverty Law Center – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia)

Georgia Coalition for the People's Agenda, Inc. (Former Proposed Intervenor-Defendant)

Georgia State Conference of the NAACP (Former Proposed Intervenor-Defendant)

Greenspoon, Robert P. (Dunlap Bennett & Ludwig PLLC – Attorney for Plaintiffs-Appellants)

Harding, Todd Andrew (Harding Law Firm, LLC – Attorney for Plaintiffs-Appellants)

Heard, Bradley E. (Southern Poverty Law Center – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia)

Ho-Sang, Montoya M. (Akerman LLP – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia, pending motion to withdraw)

Houk, Julie M. (Lawyers' Committee for Civil Rights Under Law – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Isaacson, Cory (American Civil Liberties Union Foundation of Georgia, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Jones, Steve C. (United States District Judge)

Lakin, Sophia Lin (American Civil Liberties Union Foundation – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

League of Women Voters of Georgia (Former Proposed Intervenor-Defendant)

Lee, Theresa J. (American Civil Liberties Union Foundation – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Ludwig, David (Dunlap Bennett & Ludwig PLLC – Attorney for Plaintiffs-Appellants)

Magas, Mark A. (Dunlap Bennett & Ludwig PLLC – Attorney for Plaintiffs-Appellants)

May, Caitlin (American Civil Liberties Union Foundation of Georgia, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Mocine-McQueen, Marcos (Elias Law Group LLP – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Naifeh, Stuart (NAACP Legal Defense & Educational Fund, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Nkwonta, Uzoma N. (Elias Law Group LLP – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Noonan, Alexandra (Office of Attorney General Chris Carr – Attorney for Defendant-Appellee)

O'Donnell, Courtney (Southern Poverty Law Center – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia)

O'Donnell, Renata M. (Elias Law Group LLP – Former Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Pinchak, James J. (Elias Law Group, LLP – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Putbrese, Cortland C. (Dunlap Bennett & Ludwig PLLC – Attorney for Plaintiffs-Appellants)

Quinn, William T (Plaintiff-Appellant)

Raffensperger, Brad (Defendant-Appellee, in his official capacity as Secretary of State of Georgia)

Rohani, I. Sara (NAACP Legal Defense & Educational Fund, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Rosenberg, Ezra D. (Lawyers' Committee for Civil Rights Under Law – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Shapiro, Avner M. (Southern Poverty Law Center – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia)

Smith-Carrington, Avatara A. (NAACP Legal Defense & Educational Fund, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Sparks, Adam M. (Krevolin & Horst, LLC – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Spencer, R. Gary (NAACP Legal Defense & Educational Fund, Inc. – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Szilagyi, Heather (Lawyers' Committee for Civil Rights Under – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia, pending motion to withdraw)

Washington, Anré D. (Krevolin & Horst, LLC – Attorney for Proposed Intervenor-Defendant Black Voters Matter Fund)

Weber, Gerald R. (Law Office of Gerald R. Weber – Attorney for Former Proposed Intervenors-Defendants Georgia Coalition for the People's Agenda, Inc., Georgia State Conference of the NAACP, and League of Women Voters of Georgia)

Winichakul, Pichaya Poy (Southern Poverty Law Center – Attorney for Former Proposed Intervenors-Defendants GALEO Latino Community Development Fund, Inc. and Common Cause Georgia)

***

Appellants are individuals.

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

Respectfully submitted,

*/s/ Robert P. Greenspoon*

Robert P. Greenspoon
Mark A. Magas
DUNLAP BENNETT & LUDWIG PLLC
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
rgreenspoon@dbllawyers.com
mmagas@dbllawyers.com

*Counsel for Plaintiffs-Appellants William T. Quinn and David Cross*

C-8

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................4

    I.     Congress's Enactment of the Private Right of Action Under the
          NVRA Makes Appellants' Undermined Confidence a Concrete
          Injury ........................................................................................................7

    II.    The Secretary's Generalized Grievance Argument Misapplies
          *Wood v. Raffensperger* and other Precedent and Ignores
          Particularizing Facts ..............................................................................11

    III.   The Secretary's Denial of Appellants' Right to Participate in the
          Political Process is an Actual Injury that Requires No Speculation ...15

    IV.   The Secretary Cannot Distinguish Appellants' Caselaw, but the
          Secretary's Main Cases are Distinguishable .......................................20

    V.    Policy Considerations Support Recognizing Standing Based on
          Undermined Confidence ........................................................................24

CONCLUSION ....................................................................................................25

# TABLE OF CITATIONS

**Cases**

*Am. Civil Rights Union v. Martinez-Rivera*,
166 F. Supp. 3d 779 (W.D. Tex. 2015)............................................................9

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
178 F.3d 350 (5th Cir. 1999)...........................................................................4

*Bellitto v. Snipes*,
935 F.3d 1192 (11th Cir. 2019) .................................................................. 1, 17

*Church v. City of Huntsville*,
30 F.3d 1332 (11th Cir. 1994) .......................................................................18

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ......................................................................................16

*Crawford v. Marion County Election Board*,
553 U.S. 181 (2008) .................................................................. 15, 17, 19, 20

*Garner v. Mutz*,
962 F.3d 1329 (11th Cir. 2020) ............................................................... 22, 23

*Green v. Bell*,
No. 3:21-cv-00493-RJC-DCK, 2023 U.S. Dist. LEXIS 45989
(W.D.N.C. Mar. 19, 2023) ...................................................... 8, 9, 20, 23

*Iowa Voter All. v. Black Hawk Cnty.*,
515 F. Supp. 3d 980 (E.D. Iowa 2021) ...........................................................9

*Jacobson v. Florida Secretary of State*,
974 F.3d 1236 (11th Cir. 2020) ..................................... 1, 2, 5, 6, 10, 12

*Judicial Watch, Inc. v. Griswold*,
554 F. Supp. 3d 1091 (D. Colo. 2021).......................................... 8, 9, 19, 20, 23

*Judicial Watch, Inc. v. Griswold*,
No. 20-cv-02992-PAB-KMT, 2022 U.S. Dist. LEXIS 153290
(D. Colo. Aug. 25, 2022) .......................................................... 8, 9, 19, 20, 23

*Judicial Watch, Inc. v. King*,
993 F. Supp. 2d 919 (S.D. Ind. 2012) .......................................... 8, 9, 20, 23

*Judicial Watch, Inc. v. Read*,
No. 6:24-CV-01783-MC, 2025 U.S. Dist. LEXIS 150193
(D. Or. Aug. 5, 2025) ...................................................................... 9, 23

*Ladies Mem'l Ass'n v. City of Pensacola*,
   34 F.4th 988 (11th Cir. 2022) ........................................................... 21, 22, 23

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................9

*Mancini v. Delaware County*,
   No. 24-cv-2425, 2024 U.S. Dist. 201389 (E.D. Pa. Nov. 5, 2024) ....................23

*Md. Election Integrity, LLC v. Md. State Bd. of Elections*,
   No. SAG-24-00672, 2024 U.S. Dist. LEXIS 83541 (D. Md. May 8, 2024) .........9

*Mussi v. Fontes*,
   No. CV-24-01310-PHX-DWL, 2024 U.S. Dist. LEXIS 69995
   (D. Ariz. Dec. 5, 2024) ............................................................................9

*Nat'l Coal. On Black Civic Participation v. Wohl*,
   512 F. Supp. 3d 500 (S.D.N.Y. 2021) ............................................... 21, 23

*Republican Nat'l Comm. v. Aguilar*,
   No. 2:24-cv-00518-CDS-MDC, 2024 U.S. Dist. LEXIS 189613
   (D. Nev. Oct. 18, 2024) .......................................................... 9, 14

*Republican Nat'l Comm. v. Benson*,
   754 F. Supp. 3d 773 (W.D. Mich. 2024) ....................................................9

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .............................................................. 9, 10

*Thielman v. Fagan*,
   No. 3:22-cv-01516-SB, 2023 U.S. Dist. LEXIS 112236
   (D. Ore. June 29, 2023)............................................................................23

*Wood v. Raffensperger*,
   981 F.3d 1307 (11th Cir. 2020) ........................................... 1, 2, 6, 10, 11, 12, 13

**Statutes**

52 U.S.C. § 10302..............................................................................................13

52 U.S.C. § 20507 .............................................................................................16

52 U.S.C. § 20510 .............................................. 1, 4, 5, 8, 10, 12, 16, 24

**Rules**

Fed. R. Civ. P. 11 ..............................................................................................24

<u>**INTRODUCTION**</u>

The Secretary's opposition rests on a false premise: that "undermined confidence" no matter its source always fails to support standing under Article III in NVRA voter list maintenance cases. The Secretary is not correct. As this Court has recognized, a plaintiff who identifies an impediment to participation in the political process suffers an injury-in-fact to support Article III standing. This Court so held in *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1246 (11th Cir. 2020). This Court reiterated the principle in *Wood v. Raffensperger*, 981 F.3d 1307, 1316 (11th Cir. 2020), when observing that election monitors would have standing if blocked from access to a recount. Plaintiffs here are tantamount to *Wood*'s election monitors blocked from recount access. They are Congressionally-authorized Georgia voters invoking statutory enforcement mechanisms to clean up voter registration lists as the NVRA permits, who were stonewalled by officials claiming unlimited "discretion" to ignore documented violations.

This case is not about a generalized interest in government compliance. It is about a statutory participation right Congress created in 52 U.S.C. § 20510: private voters can give notice of NVRA list maintenance violations and, if rebuffed, invoke judicial review. Appellants alleged they did exactly that, and the Secretary now asserts "discretion" to ignore them. That is concrete, particularized interference with voters' statutory participation, not a "purely psychic" injury. *See Bellitto v. Snipes*,

1

935 F.3d 1192, 1200 (11th Cir. 2019) (in case where association-plaintiff had unchallenged Article III standing, holding that NVRA list maintenance provisions impose an "affirmative obligation" on states to conduct a general program that makes a reasonable effort to clean registered voter lists of deceased residents or those who changed residence).

Here, Appellants discovered evidence of NVRA voter list maintenance violations through comprehensive analyses, provided formal notice to Georgia's chief election official as contemplated by the statute, and were met with silence followed by the Secretary's assertion of "discretion" to disregard their notice entirely. The Secretary admits in his Appellee Brief that he exercised discretion to *ignore* Appellants' bona fide notice of NVRA violations. (*See* Appellee's Br. at 19, 34 n.9). This concrete obstruction of Appellants' attempt to participate in the NVRA's enforcement process, not mere disagreement with policy, distinguishes their case from the generalized grievances properly rejected under Article III.

This Court's precedents support standing here. In *Jacobson*, this Court explicitly held that difficulties in participating in the political process constitute injury-in-fact. Likewise, in *Wood*, this Court recognized that election monitors who were denied access would have standing due to obstruction of their electoral participation. Parallel injuries happened here. That is because the Secretary closed the door to Appellants' genuine attempt to participate in the statutorily-sanctioned

2

political process, making meaningless their right to submit plausible notices of NVRA violations, for the state to correct the errors.

Accepting the Secretary's position would eviscerate the NVRA's private enforcement mechanism. State officials could violate list maintenance requirements with impunity, claiming no citizen has standing to challenge their non-compliance. Simultaneously, they could exercise self-granted "discretion" to refuse to address violation notices. Congress did not intend such a result, and the Constitution does not require it.

This Court may affirm under a narrow holding: standing exists where citizens (1) conduct plausible analysis revealing potential NVRA list maintenance violations, (2) provide formal notice to appropriate officials, and (3) encounter official obstruction or claims of unlimited discretion to ignore violations. Such conduct, in the context of underlying list maintenance errors that go unfixed, undermines those specific citizens' confidence in the integrity of elections. This undermined confidence, rooted in concrete obstruction rather than abstract worry, constitutes the particularized injury required by Article III. Finding standing here will preserve the NVRA's enforcement mechanism, but not open courts to generalized grievances.

This Court should find that Appellants have standing, reverse the decision of the district court dismissing this case, and remand for further proceedings.

**ARGUMENT**

Congress provided a voter enforcement mechanism by creating a private right of action to address NVRA violations for "aggrieved" persons under 52 U.S.C. § 20510(b). Importantly, the Secretary does not contest that Appellants are "aggrieved" persons under the statute, that list maintenance violations infect Georgia's voter rolls, that Appellants provided adequate notice of these violations, that the Secretary blatantly ignored this notice and failed to respond to Appellants, and that violations persisted at the time of the Amended Complaint. The Secretary only challenges whether Appellants can show an injury-in-fact necessary for Article III standing. (Appellee's Br. at 21). But Appellants indeed made such a showing and thus have Article III standing.

The Secretary's fundamental error in arguing that Appellants cannot show an injury-in-fact is failing to recognize that the NVRA's private right of action grants voters concrete participation rights. The Secretary's complete non-response violates the broad participatory framework Congress established.[1] *See Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999) ("We conclude that

---

[1] As will be explained later, though "[a] statutory private right of action does not mean that any plaintiff has automatically satisfied the injury-in-fact requirement," Appellants' undermined confidence does not fall into the category of manufactured categories of standing. (*See* Appellee's Br. at 29). In creating the private right of action under Section 8 of the NVRA, Congress created a specific class of "election monitors" who are subject to injury by a state's chief election officer. This does not apply generally to *any* concerned citizen.

4

although Congress did not explicitly define what it meant by an aggrieved person under the NVRA, it intended to extend standing under the Act to the maximum allowable under the Constitution."). Voters who present plausible evidence of voter list maintenance violations to their chief election officer possess a statutory right to have their notice addressed and those violations corrected. 52 U.S.C. § 20510(b).

Appellants' situation aligns precisely with the standing framework described by this Court. Specifically, Appellants have standing here because the Secretary has hindered their participation in the political process. In *Jacobson*, the Court noted that standing may be established by identifying a difficulty "in voting . . . or otherwise participating in the political process." 974 F.3d at 1246. [2] Appellants invested substantial effort in comparing voter registration data purchased from the state to USPS change-of-address records—and they then provided detailed written notice to the Secretary with supporting documentation. (Appellants' Br. at 4-5). However, the Secretary completely ignored Appellants' good faith attempt at political

---

[2] The Secretary ironically attempts to rely on *Jacobson*, but only for factually distinguishable aspects of that case. (Appellee's Br. at 20, 21, 35). Unlike the individual plaintiffs in *Jacobson*, Appellants here attempted meaningful participation in Georgia's electoral process through the exact mechanism Congress provided in the NVRA and were rebuffed. *Jacobson* did not concern the NVRA, but instead a challenge to incumbent-primacy on election ballots. *Id.* at 1246-48. This Court used distinguishable aspects to find lack of standing. Two of the three individual plaintiffs never testified that they voted and provided no evidence that they planned to. *Id.* at 1246. The third individual plaintiff failed to identify any difficulty in voting for her preferred candidate or otherwise participating in the electoral process. *Id.*

participation. In doing so, he erected a concrete barrier to Appellants' ability to "otherwise participate in the political process" of ensuring reasonable voter roll maintenance. Thus, Appellants fall squarely within the category of individuals whom the Court in *Jacobson* held would have standing.

Appellants' unique situation also squarely aligns with this Court's decision in *Wood v. Raffensperger*, 981 F.3d 1307, 1316 (11th Cir. 2020). In *Wood*, the Court provided examples of groups of people who would have standing, including "election monitors" who are "denied access to [a] recount." 981 F.3d at 1316. The Court contrasted the example of an actively participating election monitor with that of a plaintiff who could not "explain how his interest in compliance with state election laws [was] different from that of any other person" and who made no attempt whatsoever to participate in the electoral process other than voting. *Id.* at 1314-16.

Here, Appellants are far more like election monitors who would have standing than "concerned bystanders" deemed to lack standing in *Wood*. *See id.* at 1316. Like the election monitors discussed in *Wood*, Appellants sought to participate actively in the electoral process under the NVRA, but were rebuffed by the Secretary. Such particularized government officer interference by the Secretary satisfies Article III standing to bring this action.

As detailed below, the Secretary's failure to recognize that the NVRA's private right of action grants voters concrete participation rights undercuts the Secretary's argument under each element of the injury-in-fact analysis. Moreover, strong policy considerations support recognizing standing based on undermined confidence in situations like the present appeal.

## I. CONGRESS'S ENACTMENT OF THE PRIVATE RIGHT OF ACTION UNDER THE NVRA MAKES APPELLANTS' UNDERMINED CONFIDENCE A CONCRETE INJURY

Remarkably, the Secretary's first and primary argument presents an alternative ground for affirmance—that Appellants' undermined confidence is supposedly not "concrete." (Appellee's Br. at 22-26).[3] By way of recap, the injury-in-fact legal inquiry includes three prongs: (1) "concreteness" of the injury, (2) injury that is "particularized," and (3) injury that is "actual or imminent." The district court (and thus Appellants' opening brief) addressed only prongs (2) and (3). The Secretary, however, leads his argument with (1), seeking a "concreteness" decision in the first instance on appeal.

The Secretary argues that Appellants' undermined confidence, which the Secretary restates as "lost confidence," is "too abstract" to support Article III

---

[3] The Secretary claims Appellants "abandoned" potential vote dilution as a standing ground. (Appellee's Br. 4). This is not correct, since instead this appeal "focuses solely on" undermined confidence to "highlight the district court's errors." (Appellants' Br. at 9). To be clear, Appellants do not waive or forfeit vote dilution as a basis for their Article III standing.

standing.[4] (Appellee's Br. at 22). In this regard, the Secretary asserts that Appellants' injuries are mere "psychic injuries" arising from disagreement with observed government action that courts have held are insufficient to support standing. (Appellee's Br. at 23). The Secretary further asserts that Appellants made "no attempt to identify 'a close relationship' between their" undermined confidence and traditionally recognized harms. (Appellee's Br. at 23-24).

The district court was right not to find lack of standing for any supposed lack of "concreteness." Contrary to the Secretary's position, Congress made a violation of Section 8 of the NVRA a concrete injury when it expressly created a private cause of action for violation of that section under 52 U.S.C. § 20510(b). *Green v. Bell*, No. 3:21-cv-00493-RJC-DCK, 2023 U.S. Dist. LEXIS 45989, *9 (W.D.N.C. Mar. 19, 2023); *Judicial Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1104 (D. Colo. 2021); *aff'd on reconsideration*, No. 20-cv-02992-PAB-KMT, 2022 U.S. Dist. LEXIS 153290 (D. Colo. Aug. 25, 2022); *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012). While a "concrete injury" must be one that "actually exist[s]" as opposed to one that is "abstract," the Supreme Court has held that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de*

---

[4] The Secretary's brief throughout distorts Appellants' undermined confidence as "lost confidence." This attempt to diminish Appellants' injury ignores the outside influence of the Secretary's denial of Appellants' participation in the electoral process and wrongly internalizes the cause of the loss of confidence to Appellants themselves. Appellants never call their confidence "lost," but rather undermined.

*facto* injuries that were previously inadequate in law.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016), citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992). This is because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Spokeo*, 578 U.S. 341. Appellee's own cited caselaw states that "Congress's enactment of the NVRA may bolster the concreteness of certain injuries that flow from statutory noncompliance." *Mussi v. Fontes*, No. CV-24-01310-PHX-DWL, 2024 U.S. Dist. LEXIS 69995, at *16 (D. Ariz. Dec. 5, 2024). Appellants, of course, also cited decisions confirming that such an injury is "concrete." (Appellants' Br. at 12-13, citing district court decisions; Appellee's Br. at 24, agreeing that at least *King*, *Griswold* and *Green* held there to be an injury-in-fact based on NVRA-noncompliance "undermined confidence" injury).[5]

---

[5] Several of the Secretary's cited decisions finding *King*, *Griswold*, and *Green* unpersuasive do so on grounds different from the injury lacking "concreteness." For example, *Judicial Watch, Inc. v. Read*, No. 6:24-CV-01783-MC, 2025 U.S. Dist. LEXIS 150193, at *14-18 (D. Or. Aug. 5, 2025), addressed only prongs (2) and (3): particularity and actual/imminent injury. *See also Mussi*, 2024 U.S. Dist. LEXIS 69995, at *16-17 (basing decision on prongs (2) and (3) only, noting "[t]he problem is not a lack of concreteness . . . ."). The Secretary also fails to rebut Appellants' points distinguishing *Republican Nat'l Comm. v. Benson*, 754 F. Supp. 3d 773 (W.D. Mich. 2024), *Republican Nat'l Comm. v. Aguilar*, No. 2:24-cv-00518-CDS-MDC, 2024 U.S. Dist. LEXIS 189613 (D. Nev. Oct. 18, 2024), *Iowa Voter All. v. Black Hawk Cnty.*, 515 F. Supp. 3d 980, 991-92 (E.D. Iowa 2021), *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 785 (W.D. Tex. 2015), and *Md. Election Integrity, LLC v. Md. State Bd. of Elections*, No. SAG-24-00672, 2024 U.S. Dist. LEXIS 83541, at *1 (D. Md. May 8, 2024). (See Appellants' Br. at 16-17).

Here, Appellants' undermined confidence flows from the combination of Georgia's underlying NVRA list maintenance violations, plus the Secretary's decision to ignore Appellants' detailed notice that attempted to rectify the violation under the exact mechanism Congress provided in the NVRA. To the extent that this injury was previously inadequate in law, Congress elevated this to a concrete, de facto injury when it enacted the private right of action in 52 U.S.C. § 20510(b). Appellants' undermined confidence is "closely related" to other injuries concerning a denial of an individual's right to participate in the electoral process that this Court has recognized are sufficient to support standing. *See Jacobson*, 974 F.3d at 1246 (identifying as concretely injured persons, voters who cannot "otherwise participat[e] in the political process" because of a defendant's conduct); *Wood*, 981 F.3d at 1316 (distinguishing, as concretely injured persons, election monitors denied access to a recount). This is far different from the examples of "purely psychic" injuries cited by the Secretary that involved no similar violation of the NVRA. (*See* Appellee's Br. at 23).[6]

_____

[6] The Secretary's brief ignores one other historically-accepted comparable injury pointed out by Appellants—emotional distress torts at common law. (Appellants' Br. at 17-18). The Secretary does not refute that at least this historical injury satisfies the *Spokeo* test of one that is has a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 578 U.S. at 340-41. This alone contradicts the Secretary's theme that "purely psychic" injuries never permit Article III standing, and also contradicts his theme that Congress is powerless to enact a private right of action under the NVRA to abate "undermined confidence" under the present facts.

To the extent it is even necessary to resolve this appeal, the Court should find that Appellants' undermined confidence injury is in fact concrete. The Secretary effectively admits having prevented Appellants from their rightful participation in the political process. (Appellee's Br. at 19, trumpeting his "decisions in how to respond to" Appellants' NVRA notices, effectively acknowledging that a "decision" was made to stonewall Appellants; *see also* Appellee's Br. at 34 n.9). Appellants did not merely observe government conduct with which they disagreed. Rather, Appellants attempted to engage in Congressionally sanctioned participation in the political process, calculated to fix list maintenance errors and omissions, that the Secretary used self-bestowed "discretion" to ignore.

## II. THE SECRETARY'S GENERALIZED GRIEVANCE ARGUMENT MISAPPLIES *WOOD V. RAFFENSPERGER* AND OTHER PRECEDENT AND IGNORES PARTICULARIZING FACTS

The Secretary next argues that Appellants' undermined confidence is nothing more than a "generalized grievance" insufficient for standing. (Appellee's Br. at 26-34). This, too, is not correct. As explained below, the Secretary makes a series of misplaced comparisons to caselaw. Properly considered, Appellants' undermined confidence is instead a particularized injury that resulted from the Secretary's decision to impede Appellants' statutory right of participation in the political process under the NVRA.

As an initial matter, *Wood* does not bar all undermined confidence claims as generalized grievances. The Secretary asserts throughout his brief that *Wood* is controlling precedent on the issue of whether undermined confidence can support standing. (Appellee's Br. at 1-3, 18-19, 26-28). The Secretary relies in key part on the rule that "[a]n injury to the right to require that the government be administered according to the law is a generalized grievance," and the Court's rejection of some types of vote dilution as a theory for standing. *Wood*, 981 F.3d at 1314-16 (quotation omitted). According to the Secretary, Appellants are simply "recast[ing] a generalized vote dilution claim" as undermined confidence. (Appellee's Br. at 28).

To the contrary, Appellants' undermined confidence has a different factual predicate than their fear of vote dilution. Appellants' undermined confidence is also based on their attempt to participate in the political process by exercising their right to send the chief election officer a notice of Georgia's violation under the NVRA, and the Secretary's exercise of alleged discretion to ignore this notice. (Appellants' Br. at 5). The private right of action under 52 U.S.C. § 20510 permits federal court enforcement when *that* violation remains *uncorrected* by the chief elections officer after a window of time of up to 90 days. Standing on the basis of undermined confidence in the electoral process, triggered by the Secretary's failure to make compliant corrections urged by the private party naming the needed corrections, fits squarely with *Wood*, as well as with *Jacobson*, 974 F.3d at 1246 (noting that a

difficulty in "participating in the political process" may provide standing, as explained above). Appellants are not relitigating *Wood*.

The Secretary attempts to distinguish the Court's examples in *Wood* of a political candidate challenging election irregularities or an election monitor who was denied access to a recount as plaintiffs who may have particularized injuries. (Appellee's Br. at 28). The Secretary cursorily notes that Appellants are neither candidates nor election monitors. (Appellee's Br. at 28). True, of course. But the Secretary misses the point. Both examples embody a plaintiff denied an established right (indeed, a statutorily-generated right) to participate in the political process. *See* 52 U.S.C. § 10302(a) (federal election monitor appointment process). The Secretary attempts no argument that might distinguish Appellants' undermined confidence here from this class of authorized yet blockaded political participants. Appellants' unique experience and interaction with the state different from that of the public results from the Secretary's deprivation of their statutorily-provided right to participate in the political process. (*See* Appellants' Br. at 11).

The Secretary also faults Appellants for pointing out that *Wood* addressed state law and was not based on a violation of the NVRA, arguing that Appellants' "unique experiences" do not demonstrate how their undermined confidence is particular to them. (Appellee's Br. at 29-34). These arguments similarly miss the point. Appellants' NVRA notice represents their personal attempt to participate in

the political process, which the Secretary blockaded. Appellants are not relying on a "mere interest" in election integrity or their interest as a voter in general. (*See* Appellee's Br. at 32-33). Furthermore, while the Secretary again points to a separate district court case in *Aguilar* to argue that it is a "consistent sentiment" that undermined confidence is a generalized grievance, the Secretary did not even attempt to rebut Appellants' points distinguishing this case and others. (*See* Appellee's Br. at 33; Appellants' Br. at 16-17).

In this Court, the Secretary claims a categorical right to blockade NVRA list maintenance correction notification and participation by *anyone*, indefinitely into the future, no matter the merit of the notice or the identity of the rebuffed private plaintiff.[7] (Appellee's Br. at 19, 34 n.9). His claim of such power to override Congress's will goes too far. Appellants' undermined confidence is particularized to themselves. The Secretary's attempt to paint Appellants as persons merely disagreeing with objectionable government conduct and having a general interest in the maintenance of Georgia's voter rolls overlooks the actual facts of this case.

---

[7] Appellants pointed to the Secretary's motion to dismiss and the arguments therein to demonstrate that the Secretary's blockade of Appellants' participation is an ongoing issue causing continuing non-speculative harm. Appellants obviously do not rely on these facts as providing the initial basis their undermined confidence. (*See* Appellee's Br. at 34).

**III. THE SECRETARY'S DENIAL OF APPELLANTS' RIGHT TO PARTICIPATE IN THE POLITICAL PROCESS IS AN ACTUAL INJURY THAT REQUIRES NO SPECULATION**

The Secretary further argues that Appellants' undermined confidence is too speculative to satisfy Article III. (Appellee's Br. at 35-40). The Secretary asserts that Appellants' undermined confidence relies on a "speculative chain of possibilities" related to vote dilution: that there must be ineligible voters on the active voter list, that they will not otherwise be removed from the list, that that they will engage in voter fraud, and that no safeguard will stop them. (Appellee's Br. at 35).

The Secretary again fundamentally misunderstands Appellants' undermined confidence and attempts to characterize it as merely "repackag[ing] their vote dilution claim into a lost confidence claim." This is incorrect, as explained above in the particularized injury analysis. And, this conflation violates Supreme Court authority that holds undermined confidence has "independent significance" compared to vote dilution, where the absence of public confidence creates independent identifiable problems. *Crawford v. Marion County Election Board*, 553 U.S. 181, 197 (2008). Appellants' undermined confidence is based on their attempt to participate in the political process by exercising their right to file a notice of Georgia's violation under the NVRA, the failure to correct violations, and the Secretary's exercise of alleged discretion to ignore this notice—not just their fear of vote dilution. (Appellants' Br. at 5).

15

As such, the Secretary's comparison to *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) is inapposite. (Appellee's Br. at 35-37). Unlike the plaintiffs in *Clapper*, who tried to repackage their fear of future government surveillance as present injuries, Appellants' injuries from the Secretary's denial of their attempt to participate in the political process already occurred, and is still occurring. *See Clapper*, 568 U.S. at 414. The Secretary's "chain of possibilities" argument is inapposite. While vote dilution might require speculation about whether ineligible voters will actually vote, the obstruction of Appellants' participation right has already occurred and will recur given the Secretary's claimed "discretion" and proven failure to correct violations.

Article III does not require Appellants to prove future illegal votes. The injury arose as an "actual" injury once Appellants exercised the NVRA's private participation mechanism (a 52 U.S.C. § 20510(b) notice) identifying specific records built from official data and USPS National Change of Address lists; asked the Secretary to trigger 52 U.S.C. § 20507(c) confirmation notices; and were met with silence and a litigating position that the Secretary has "discretion" to do nothing. (Dist. Ct. Dkt. 45, ¶¶ 26–31, 39–45, 49–51; Appellee's Br. at 19, 34 n.9). This is a present, individualized process-denial injury tied to Congress's enforcement design that promises to go on indefinitely, not "disagreement with government action." *See*

*Bellitto*, 935 F.3d at 1200 (NVRA § 8 imposes an "affirmative obligation" to conduct a reasonable program).

Indeed, the Secretary fails to rebut Appellants' point that their undermined confidence is "actual" rather than "imminent." First, the Secretary faults Appellants for "suggest[ing] that only injuries pleaded as imminent injuries can be speculative, and those pleaded as actual injuries cannot." (Appellee's Br. at 37-38). This misstates Appellants' argument. Appellants' point was that it is illogical to evaluate whether an injury is speculative when that injury already occurred. (*See* Appellants' Br. at 19). The Secretary does not deny the sufficiency of Appellants' notice or that the Secretary ignored this notice.

Second, the Secretary faults Appellants for their argument to the district court that their fear of vote dilution contributed to their undermined confidence. (Appellee's Br. at 37). This argument likewise fails. That Appellants' undermined confidence may be affected by a myriad of factors, one of which (the risk of vote dilution) may not be recognized by this Court as sufficient alone to support standing, does not negate the other factors. Nor can the Secretary sidestep the "independent significance" of undermined confidence, as compared to vote dilution. *Crawford*, 553 U.S. at 197.

Third, the Secretary argues in the alternative that, assuming Appellants' injury is "actual" rather than "imminent," Appellants' interactions with the Secretary

cannot support their request for prospective injunctive relief. (Appellee's Br. at 38). The Secretary notes that a remedy of prospective injunctive relief requires a plaintiff to show a substantial likelihood of injury in the future. (Appellee's Br. at 38). According to the Secretary, it is not certain that the Secretary will decline to respond to future letters from Appellants, and thus Appellants' "actual" injury precludes their claim for injunctive relief. (Appellee's Br. at 38-39).

There are several flaws with the Secretary's argument. Under this Court's decision in *Church v. City of Huntsville*, standing exists for a plaintiff seeking future injunctive relief where the plaintiff (1) suffered past injury, and (2) there is a "real or immediate threat" that the conduct that led to the harm would recur in the future. 30 F.3d 1332, 1337 (11th Cir. 1994). Both elements are met here. Appellants suffered a past injury when the Secretary ignored their bona fide notice, as explained above. And, contrary to the Secretary's position, it is certain that the Secretary's conduct in ignoring Appellants' notice will continue. In the Amended Complaint, Appellants pleaded that the NVRA violations were "ongoing" and "systemic," with over a third of the originally-identified ineligible voters continuing to exist on the rolls. (Dist. Ct. Dkt. No. 45 ¶ 45). The Secretary has still never engaged Appellants regarding the substance of their notice letter. The Secretary dubiously asserting that he may reply to "future" letters does nothing to address the harm from ignoring the original letter. It is *those* noticed violations that are still uncorrected, and that still

keep the Secretary in violation of the NVRA. The Secretary's suggestion about a response to future letters is also belied by the Secretary's conduct and statements in this case about exercising complete discretion to ignore Appellants' notice. (*See* Appellee's Br. at 19, 34 n.9). Appellants have standing to seek injunctive relief on this basis.

Finally, at the end of his brief, the Secretary attempts to distinguish *Griswold*, 554 F. Supp. 3d, 1091, 1103–04 (D. Colo. 2021), *aff'd on reconsideration*, No. 20-cv-02992-PAB-KMT, 2022 U.S. Dist. LEXIS 153290 (D. Colo. Aug. 25, 2022). (Appellee's Br. at 39-40). The Secretary sidesteps the relevant holding from *Griswold* that the plaintiffs' confidence in the electoral process was undermined at the (then) present time, that they were "not worried that their confidence could be undermined at some point in the future," and that standing nonetheless existed to obtain injunctive relief. (Appellants' Br. at 19). The Secretary instead claims that the court's recognition of undermined confidence as an injury to support an NVRA list maintenance claim was based on an erroneous understanding of *Crawford*. (Appellee's Br. at 39-40).

The Secretary asserts that *Crawford* concerned the state of "Illinois'" [sic] interest in protecting public confidence in elections, not an individual's confidence. (Appellee's Br. at 39-40). (The case actually involved *Indiana's* voter ID law). The Secretary does not explain how an individual voter's interest in election integrity is

meaningfully different from the interest of a state that represents voters by passing laws to preserve election integrity. This is especially so in light of the Supreme Court's description of election integrity as "encourag[ing] participation in the democratic process," plus its invocation of "*public* confidence." *Crawford*, 553 U.S. at 197 (emphasis added). The Secretary's attempted state-versus-private distinction of *Crawford* is a distinction without a difference.

Cases like *Griswold* therefore do not err to rely on *Crawford*. *Crawford* explains that confidence in the integrity of the electoral process is distinct from concerns about voter fraud *per se*, having "independent significance." *Id.* This is the law of the land, and confirms "undermined confidence" as its own form of private-party injury-in-fact. No matter how stingily the Secretary reads *Crawford*, it remains true that Appellants' undermined confidence here, like the plaintiffs' undermined confidence in *Griswold*, is actual and present rather than speculative, and will continue unabated into the future in the absence of judicial correction.

## IV. THE SECRETARY CANNOT DISTINGUISH APPELLANTS' CASELAW, BUT THE SECRETARY'S MAIN CASES ARE DISTINGUISHABLE

Appellants presented compelling authority that undermined confidence in election integrity may give rise to an injury-in-fact for Article III standing, particularly in NVRA cases. (Appellants' Br. at 12-13, citing district court decisions, including *Green*, *Griswold* and *King*). In response, the Secretary provides only

20

cursory analysis, other than his statement that some district court decisions label these decisions unpersuasive. (Appellee's Br. at 24-25). Neither side located any appellate court authority, confirming this issue as one of first impression in the Eleventh Circuit.

Crucially, the Secretary leaves unstated *why* his cited decisions offer better reasoning. Nor does he offer any reasoning at all to explain why his cited decisions are germane to the present facts, including the Secretary's specific decision here to rebuff Appellants who supplied him with bona fide NVRA list maintenance violation notices. At most, the Secretary picks out Appellants' citation of *Nat'l Coal. On Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 515-16 (S.D.N.Y. 2021), to distinguish it as not involving government action. (Appellee's Br. at 24).

But the Secretary misses the point of *Wohl*. It is indeed outside the NVRA context, but holds that undermined confidence in election integrity constitutes sufficient injury for Article III standing. (Appellants' Br. 12, citing *Wohl* for this proposition). Regarding threatening robocalls to voters, the *Wohl* court credited plaintiffs' affidavits describing the "emotional impact the calls had," including "how receiving the robocall irreversibly ***undermined [her] confidence*** in voting by mail," explaining how these supported standing. 512 F. Supp. 3d at 516 (emphasis added).

Meanwhile, the Secretary himself relies on numerous cases outside the NVRA context. These, however, are inapposite. The Secretary cites *Ladies Mem'l Ass'n v.*

21

*City of Pensacola*, 34 F.4th 988, 993 (11th Cir. 2022), to argue that "purely psychic injuries based on disagreement with government conduct are too abstract under Article III." (Appellee's Br. at 17, 23). But plaintiffs there merely disagreed generally with a city taking down a Confederate cenotaph. No Act of Congress lent plaintiffs status as a special category of person, *e.g.*, holding a private right of action for government violations of a specific law related to Confederate cenotaphs. The Secretary also cites *Garner v. Mutz*, 962 F.3d 1329, 1341 (11th Cir. 2020) for the same proposition, noting that "conscientious objection" to a government policy and purely psychological "fear" do not qualify. (Appellee's Br. 4, 23). But *Garner* was another cenotaph removal case, not about persons rebuffed from vindicating their statutorily-assigned status authorizing them (on pain of judicial review) to spur the government to correct its misdeeds. *Garner* is thus inapposite for the same reasons just stated for *Ladies Memorial Association*.

Finally, the Secretary ignores the key distinctions Appellants pointed out within the decisions the Secretary attempts to cite that criticize Appellants' NVRA authority as unpersuasive. (*See* Appellants' Br. at 16-17). He therefore fails to defend his cited authorities from Appellants' showing that they are inapposite.

Though he cites three new cases for the first time, each of those is distinguishable as well.[8]

While the Secretary cites his own authority, he fails to explain adequately why those decisions should control over cases Appellants cite addressing NVRA-based undermined confidence claims, such as *Green*, *Griswold* and *King*. He also fails to credit *Wohl* as a non-NVRA case that accepts undermined confidence as a ground for Article III standing. Instead, he mainly relies on inapposite cenotaph-teardown authority: *Ladies Memorial Association* and *Garner*. When he does rely on NVRA cases that choose not to follow *Green*, *Griswold* and *King*, he overlooks the key factual distinction here of the Secretary's assumed "discretion" to block Appellants from their rightful participation in the political process. (Appellee's Br. 19, 34 n.9).

---

[8] *Judicial Watch v. Read*, 2025 U.S. Dist. LEXIS 150193, involved a state official who actually replied to the organization's NVRA notice, rather than blocking them from participation in the political process. *Mancini v. Delaware County*, No. 24-cv-2425, 2024 U.S. Dist. 201389 (E.D. Pa. Nov. 5, 2024), did not involve the NVRA, but instead involved allegations that voting machines were operated unlawfully, and included no indication of a government official blocking plaintiffs from political participation. *Thielman v. Fagan*, No. 3:22-cv-01516-SB, 2023 U.S. Dist. LEXIS 112236 (D. Ore. June 29, 2023), did not involve the NVRA, but instead claims that Oregon's computerized vote tabulation and vote by mail were unlawful, and likewise included no indication of a government official blocking plaintiffs from political participation.

**V. POLICY CONSIDERATIONS SUPPORT RECOGNIZING STANDING BASED ON UNDERMINED CONFIDENCE**

In addition to challenging whether Appellants can show an injury-in-fact, the Secretary suggests that finding standing here would essentially open the floodgates such that "any citizen could challenge any voting law at any time just by asserting that they 'lost confidence' in election integrity." (Appellee's Br. at 2; *see also* Appellee's Br. at 34). The Secretary misunderstands the basis for standing here. As Appellants noted in their opening brief, courts in several different jurisdictions have found that plaintiffs have standing to bring an NVRA private enforcement action based on undermined confidence. (Appellants' Br. at 12-13). Yet, the Secretary fails to point to any surge in election litigation in these jurisdictions (the expected outcome, if it were as easy as the Secretary claims to challenge voting laws). Finding that Appellants have standing here presents a narrow ground for standing—a voter must first provide sufficient notice of a list maintenance violation to a state's chief election official under the NVRA and be rebuffed. The Secretary also omits mention of existing procedural safeguards against frivolous litigation, including Fed. R. Civ. P. 11 and the fee shifting provision of the NVRA in 52 U.S.C. § 20510(c) (allowing courts to award "the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs").

Recognizing Appellants' standing would prevent dangerous enforcement gaps that undermine the NVRA's effectiveness. Private voter enforcement under the

NVRA provides an essential accountability mechanism that Congress specifically designed to ensure state compliance with federal voting rights obligations. The Secretary's position creates an impossible standard under which no voter could ever enforce NVRA list maintenance obligations regardless of their efforts, evidence, or statutory compliance—effectively nullifying the voter enforcement provision that Congress deliberately included in the Act. This approach would create a constitutional anomaly where state election officials could completely abandon their NVRA compliance duties while simultaneously immunizing such violations from any privately-triggered judicial review. Federal agencies have limited resources and competing priorities, and state officials are unlikely to challenge their own non-compliance. This is the very reason for the creation of a private right of action. The Secretary's approach would transform the NVRA's private right of action from a meaningful enforcement tool into an empty promise, allowing states to ignore their federal obligations with impunity while denying aggrieved voters any recourse through the courts that Congress specifically empowered to hear such claims.

## <u>CONCLUSION</u>

For all of these reasons, as well as the reasons stated in Appellants' opening brief, the Court should find that Appellants have standing in this case, reverse the district court decision dismissing this case, and remand for further proceedings. At minimum, if the Court concludes that additional pleaded facts in the Amended

Complaint are needed to establish Article III injury-in-fact, it should vacate and remand with instructions to permit amendment.

Dated: September 29, 2025      Respectfully submitted,

*/s/ Robert P. Greenspoon*

Robert P. Greenspoon
Mark A. Magas
DUNLAP BENNETT & LUDWIG PLLC
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
rgreenspoon@dbllawyers.com
mmagas@dbllawyers.com

*Counsel for Plaintiffs-Appellants William T. Quinn and David Cross*

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 32(g)(1) and Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,953 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14pt Times New Roman font.


Dated: September 29, 2025                              */s/ Robert P. Greenspoon*
                                                      Robert P. Greenspoon

## CERTIFICATE OF SERVICE

The undersigned counsel certifies on this day the foregoing was filed electronically with the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: September 29, 2025

*/s/ Robert P. Greenspoon*
Robert P. Greenspoon